**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BARBARA FRANKLIN,

    Plaintiff-Appellant,

v.

DEPARTMENT OF VETERANS
AFFAIRS,

    Defendant-Appellee.

No. 97-1264

(D.C. No. 96-S-1031)

(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

---

Plaintiff Barbara Franklin appeals from a grant of summary judgment to

Defendant in a case involving claims of race, gender, and age discrimination.

Plaintiff is an African-American woman who, at the time of the alleged

discrimination, was sixty-two years old. Since 1992, she has been a minister in

the African Methodist Episcopal System, and, in 1993, she received a Ph.D. in

Theocentric Counseling from LaSalle University. In May 1994, Plaintiff applied

for a position as a chaplain with the United States Department of Veterans Affairs

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Medical Center in Denver, Colorado. She was endorsed by her church, a proper endorsing institution, for the chaplain position, and she served as a volunteer at the Denver VA Medical Center beginning in November 1993.

The National Chaplain Center in Hampton, Virginia, which reviews all applications for VA chaplain positions, rejected Plaintiff's application because she did not meet the educational and experience eligibility requirements for a VA Staff Chaplain. First, she did not have a Master of Divinity degree[1] or some equivalent course work from an accredited university. LaSalle University apparently was not an accredited institution, and Plaintiff's transcripts did not indicate course work in pastoral ministry, church history or world religions, and scriptural studies. Second, Plaintiff did not have the required three years of post-graduate pastoral experience; she had less than one year of such pastoral experience. The reviewing chaplains determined that even if they waived one year of experience, which was the maximum waiver allowed, Plaintiff's experience still would be deficient by one year. After Plaintiff resubmitted her application and a new set of reviewers rejected it a second time,[2] she brought suit

_____

[1]According to the record, the nomenclature "Master of Divinity" replaced "Bachelor of Divinity" in the early 1970s. However, the two educational programs are the same and the graduate degree requirement has been in effect since at least in 1964. See Appellant's App., Doc. 6 at 58 n.1.

[2]In her returned application, Plaintiff found a note stating her name, age, and regional location. In response to a letter of complaint from Plaintiff's

(continued...)

-2-

against the VA. She claimed intentional discrimination and disparate impact based on her race and gender pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and 42 U.S.C. § 1981, and age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634.

After reviewing the magistrate judge's recommendation and Plaintiff's objections thereto, the district court granted summary judgment for Defendant. With respect to Plaintiff's claims of intentional discrimination, the district court concluded that Plaintiff could not establish a prima facie case because she was not qualified for the position. It also determined that, even if she were sufficiently qualified to establish a prima facie case, Defendant had articulated a legitimate, nondiscriminatory reason for its rejection of her application. Finally, the district court explained that "[w]hether or not Defendant's qualification criteria are unconstitutional, Plaintiff has not demonstrated that Defendant denied her the job because of intentional discrimination based on her age, race, or

---

[2](...continued)
attorney, the Deputy Director of the Chaplain Center directed Plaintiff to resubmit her application for review by a new set of examiners. Additionally, an investigation was conducted into the origin of the note. The investigation revealed that the Program Assistant for Personnel for the Chaplain Center had written the note, but that she had no responsibility for the selection of chaplains, she did not intend her notation to have any effect on the selection, and, in any event, she considered Plaintiff's age to be a favorable factor. See Appellant's App., Doc. 6 at 119; Doc. 12 at 227.

gender." Appellant's App., Doc. 12 at 228. As for the disparate impact claims, the district court determined that Plaintiff did not establish a prima facie case because she did not present "any evidence, statistical or otherwise, that shows Defendant's qualification criteria caused a significant disparate impact on a protected group." Id. at 230.

On appeal, Plaintiff principally argues that the VA's educational and experience standards violated the First Amendment constraints on religious tests for public positions. She therefore claims that because Defendant relied on these unconstitutional standards to articulate its legitimate, nondiscriminatory reason for rejecting her application, that reason is not legitimate and the trial court erred in granting summary judgment to Defendant.

We review a court's decision on summary judgment de novo, applying the same legal standard used by the district court pursuant to Federal Rule of Civil Procedure 56(c). See Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "'When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary

judgment.'  If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court." Wolf, 50 F.3d at 796 (internal citation omitted).

Our review of the record and the applicable law leads us to conclude that the trial court was correct when it essentially concluded that Plaintiff had presented no evidence that would establish any nexus between the rejection of her application and race, gender, or age.  The court reached this conclusion as to both her intentional discrimination claims and her disparate impact claims.  In analyzing the disparate impact claims, for example, the court stated that "[t]he evidence does not establish any connection between Defendant's qualification criteria and a substantial adverse effect on women, African-Americans, or people over [forty] years of age."  Appellant's App., Doc. 12 at 230; see also id. at 223 n.2.  Further, the court properly distinguished Murphy v. Derwinski, 776 F. Supp. 1466, 1470 (D. Colo. 1991), aff'd, 990 F.2d 540, 547 (10th Cir. 1993), on which Plaintiff heavily relied because, unlike this case, Murphy involved specific evidence of disparate impact on a protected class.  See Appellant's App., Doc. 12 at 230-31.  Also worth noting is the court's determination that the only piece of evidence offered for the age discrimination claim, the notation of Plaintiff's age on a piece of paper in her returned application, did not constitute evidence of intentional discrimination.  See id. at 227.

As a result, we **AFFIRM** for substantially the same reasons set forth in the district court's Order filed May 20, 1997.[3]

Entered for the Court


Monroe G. McKay
Circuit Judge

---

[3]Because we agree with the district court's analysis and conclusion, we do not address the constitutional or jurisdictional questions raised in the briefs and at oral argument.